**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cr-27 |
| | ) | |
| JOSE HERNANDEZ BAUTISTA, | ) | Hon. Rossie D. Alston, Jr. |
| | ) | |
| Defendant. | ) | Sentencing: July 8, 2026 |

**<u>DEFENSE POSITION ON SENTENCING</u>**

Start at the bottom but show them your worth. Work hard. Harder than everyone else. Don't be self-absorbed, though. Help others. Be a leader and get the best out of everyone around you. Make them better.

This was José Hernández Bautista's plan for success and a new life in the United States of America. And the letters of support from family and friends suggest that he was carrying out the plan [1]. Only, it was a plan was built on someone else's identity. José broke the laws of a country he unquestionably improved, but he stands ready to be accountable for the way he carried out his plan.

Mr. Hernández Bautista has been jailed for nearly half a year. Before now, his last carceral experience was brief and nearly 20 years ago. Now he faces no less than two years in prison and will spend even more time behind bars due to the detainer lodged by Immigration Customs and Enforcement (ICE). For the reasons stated

---

[1] *See* Collective Exhibit 1 – letters of support.

below, a prison sentence of 30 months is sufficient but not greater than necessary to meet the goals of 18 U.S.C. § 3553(a).

## I.    Legal Background

After *United States v. Booker*, the Sentencing Guidelines range is advisory, and courts must consider it as just one of more than a half dozen statutory sentencing factors enumerated in 18 U.S.C. § 3553(a).[2]   *See* 543 U.S. 220, 259-60 (2005).   *See also Kimbrough v. United States*, 552 U.S. 85 (2007) (Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. § 3553(a)); *Gall v. United States*, 552 U.S. 38 (2007) (same).  The primary directive in the actual language of §3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. After *Booker*, *Kimbrough* and *Gall*, sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of § 3553(a).

Importantly, the Supreme Court has admonished that a sentence must fit the specific circumstances of the case, tailored to the offense and to the defendant.  *See Pepper v. United States*, 562 U.S. 476, 490 (2011); *Gall*, 552 U.S. at 54.

---

[2] Those factors are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a).

## II.   The Presentence Report

Mr. Hernández Bautista has reviewed the Presentence Report ("PSR") that was disclosed on June 3, 2026, and the amended PSR disclosed on June 30, 2026. He has no objections to the Guidelines.

## III.   Argument

***Offense nature and circumstances.*** The offense conduct section of the PSR details the facts of Mr. Hernández Bautista's misconduct. Essentially, he used another person's personal identifiers to obtain driver's licenses, to obtain a replacement Social Security card, purchase a vehicle, and to vote twice. He also used that individual's identity to acquire a United States passport, but he never used it. Mr. Hernández Bautista is not a citizen of the United States, and he has been removed from the United States three times.

***Defendant's history and characteristics.*** José was born on April 15, 1987, in Cuitláhuac, Veracruz, Mexico, a town he remembers as calm and peaceful. His primary language is Spanish, but he is fluent in English. José grew up alongside his older sister, Julieta Hernández, as the son of Hugo Hernández and Julia Bautista, who worked as sugar cane producers before retiring.

José describes having a close relationship with his parents. His father was a hardworking man who earned a decent living and provided for the family. However, home life was not without its difficulties. José's parents argued frequently when his father had been drinking, and his father's infidelity was a recurring source of conflict

3

in their marriage.  Despite these struggles, Julia chose to remain in the marriage for the sake of her children.

From the time José was about six years old, his father would discipline him with a leather belt whenever José asked for or wanted something.  Looking back as an adult, José has come to understand this behavior because of his father's alcoholism and difficulty managing his anger.  He does not view these experiences as negative or traumatic, and his sense of closeness with his parents has remained intact.

When José was 16, his parents separated.  He held mixed feelings about the split — while he was relieved that the tension and conflict at home would subside, and that his mother would no longer be subjected to his father's outbursts, he still missed having his father present.

In his personal life, José has never formally married, though he shares a committed relationship with his longtime girlfriend, Alma Romero, whom he considers his wife in every meaningful sense.  While José and Alma do not have children together, Alma brings three children from an earlier relationship into their family. José also has a 12-year-old daughter of his own, Kloe Hernández, from a past relationship with Guadalupe Pérez.  Kloe lives in Alabama with her mother.

Work has always been a central part of José's identity and sense of purpose. During his career, he has developed skills in masonry and carpentry and built a long and stable tenure with Kiewit Corporation, where he worked for about nine years.  In the two years leading to his arrest and detention, he had risen to the role of superintendent, a testament to his dedication and the trust his employer placed in

4

him.  Looking ahead, José remains motivated and eager to productively use his time while incarcerated in the Federal Bureau of Prisons, particularly focusing on acquiring new skills and continuing to grow professionally.

***Need to avoid unwarranted sentencing disparities.*** A sentence within the applicable guideline range would create unwarranted sentencing disparities. Undersigned counsel attempted to collect all the passport fraud cases heard in the Alexandria division and represented by the Federal Public Defender, excluding those where the advisory guidelines information was unavailable.  This Court presided over two of the cases.

In *United States v. Mia Gibson*, No. 1:24cr30-RDA (E.D. Va. May 8, 2024) the defendant was convicted of Passport Fraud, in violation of 18 U.S.C. § 1543.  Ms. Gibson's advisory sentencing guidelines range was 6 to 12 months' imprisonment and her criminal history category was I.  This Court imposed a sentence of time served which was four months and ten days[3].

In *United States v. Christin Nyandemo*, No. 1:25cr77-RDA (E.D. Va. April 2, 2025) the defendant was convicted of Misuse of a Passport, in violation of 18 U.S.C. § 1544.  Ms. Nyandemo's advisory sentencing guidelines range was 0 to 6 months' imprisonment and her criminal history category was I.  This Court imposed a sentence of time served which was 38 days[4].

---

[3] Ms. Gibson was in custody from her arrest on November 29, 2023, 2024 until her sentencing on May 8, 2024. ECF Nos. 10, 37.

[4] Ms. Nyandemo was in custody from her arrest on February 24, 2025 until her sentencing on April 2, 2025. ECF Nos. 5, 20.

These defendants were convicted of Passport Fraud in cases presided over by other judges in this division:

| Case Number | Defendant | Advisory Imprisonment Range and Criminal History Category | Disposition |
|---|---|---|---|
| 1:18cr438-AJT | Getachew Herpo | 6 to 12 months CHC I | 2 years probation |
| 1:11cr465-GBL | Wendell Johnson | 1 to 7 months CHC II | 2 years 3 months 22 days of probation |
| 1:03cr572-CMH | Oscar Vasquez Escobar | 0 to 6 months CHC I | 2 years probation |
| 1:14cr219-TSE | Ever Melendez | 0 to 6 months CHC I | 60 days community confinement, 2 years supervised release |
| 1:12cr325-LMB | Ihab Megid | 6 to 12 months CHC I | 4 days BOP, 2 years supervised release |
| 1:07cr411-CMH | Sara Contreras | 0 to 6 months CHC I | Time served (8 days), 2 years supervised release |
| 1:18cr315-LO | Jeremy Ofori-Yentumi | 0 to 6 months CHC I | 30 days BOP, 1 year supervised release |
| 1:11cr511-CMH | Patrick Roark | 6 to 12 months CHC I | 1 month BOP, 1 year supervised release |
| 1:19cr146-LMB | Rider Blanco Vega | 0 to 6 months CHC I | Time served (32 days), 1 year supervised release |
| 1:17cr37-TSE | Ruben Guerrero Horna | 0 to 6 months CHC I | 3 months BOP, 3 years supervised release |
| 1:10cr486-GBL | Olman Zuniga | 0 to 6 months CHC I | Time served (4 months 3 days), 2 years supervised release |
| 1:11cr4-GBL | Daniel Umana-Alvarez | 6 to 12 months CHC I | Time served (4 months 24 days BOP), 3 years supervised release |
| 1:10cr160 O'Grady | Efrain Benites | 6 to 12 months CHC I | 6 months BOP, 3 years supervised release |
| 1:14cr272-CMH | Jacqueline Colindres | 6 to 12 months CHC IV | 6 months BOP, 3 years supervised release |
| 1:17cr31-AJT | Kofi Takyi | 10 to 16 months CHC III | 7 months BOP, 2 years supervised release |

6

| 1:10cr99-GBL | Ghulam Sarwari | 15 to 21 months CHC I | 12 months and 1 day BOP, 2 years supervised release  *3 counts of Passport Fraud |
|---|---|---|---|

The data reveals that the norm is imposition of a sentence that is below or at the lowest end of the guideline range.  In some cases, no incarceration was imposed at all. In the case of the defendant with the highest criminal history category of those identified – Kofi Takyi with a criminal history category of III – a downward variance of seven months was imposed.  Mr. Hernández Bautista is in a lower criminal history category.  On balance, imposition of six months of incarceration on count two would constitute a variance but would create no unwarranted sentencing disparities.  Such a sentence would be consistent with, if not a bit higher than, those imposed on similarly situated defendants.

*Deterrence.*  The goals of sentencing would not be meaningfully advanced by a longer term of incarceration; instead, it would segregate Mr. Hernández Bautista for longer in an anti-social environment.   Even the Department of Justice acknowledges that incarceration can undermine deterrence rather than foster it.  *See* Nat'l Instit. of Justice, DOJ, Five Things About Deterrence (June 5, 2016) ("Prisons actually may have the opposite effect: Inmates learn more effective crime strategies

from each other, and time spent in prison may desensitize many to the threat of future imprisonment.").[5]

***Promoting respect for the law and providing just punishment.*** Punitive incarceration is but one measure – and an insufficient one – by which the criminal justice system may earn public respect. *See Gall*, 552 U.S. at 54 ("[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." (internal quotation marks omitted)). The requested sentence promotes respect for the law by weighing and addressing the specific concerns, rather than reflexively relying on incarceration as a one-size-fits-all sanction.

An immigration detainer has been lodged against Mr. Hernández Bautista and any sentence this Court imposes will be followed by what could be a lengthy period in immigration detention. *See* PSR at 1. Even though immigration custody is civil detention rather than criminal incarceration, the "similarities" between the two "are too strong to ignore." *United States v. Estrada-Mederos,* 784 F.3d 1086, 1091 (7th Cir. 2015) (internal citations and quotations omitted) (reversing the district court for failing to consider defendants argument for a variant sentence because of his uncredited immigration detention). That is to say, the punishment Mr. Hernández Bautista receives from this Court will be followed by further incarceration which

---

[5] National Institute of Justice, *Five Things About Deterrence*, https://nij.ojp.gov/topics/articles/five-things-about-deterrence

serves the goals of deterrence, retribution, and just punishment. Further, while in BOP custody, Mr. Hernández Bautista will be ineligible or less able to access many services BOP offers, including drug treatment. As a "deportable alien" with an ICE detainer and removal order, Mr. Hernández Bautista will be barred from assignment to minimum security prisons.[6] For the same reason, he will only be eligible to participate in occupational education programs if BOP "resources permit after meeting the needs of other eligible inmates," which is almost certain not to occur.[7] Meaning, here there is no reason to issue a long sentence to provide Mr. Hernández Bautista access to programing.

## CONCLUSION

For these reasons, Mr. Hernández Bautista submits that a sentence of thirty months' imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing. Mr. Hernández Bautista disagrees with the probation officer's suggestion that he could pay a fine because that assessment was based on pre-detention circumstances that existed months ago. S*ee* PSR ¶ 96. Further, Mr. Hernández Bautista requests that the Court recommend that he be designated for service of his sentence to a facility as close as possible to Maryland to be near his family.

---

[6] Federal Bureau of Prisons, *Change Notice – Inmate Security Designation and Custody Classification*, https://www.bop.gov/policy/progstat/5100_008_cn-3.pdf

[7] Federal Bureau of Prisons, *Program Statement 5353.01: Occupational Educational Programs*, https://www.bop.gov/policy/progstat/5353_001.pdf

Respectfully submitted,
JOSE MARIA HERNANDEZ BAUTISTA

By Counsel,
Geremy C. Kamens
Federal Public Defender

By:  /s/ Sean C. Mitchell
     Sean C. Mitchell
     Va. Bar No. 90922
     Assistant Federal Public Defender
     1650 King Street, Suite 500
     Alexandria, Virginia   22314
     (703) 600-0867 (tel)
     (703) 600-0880 (fax)
     sean_mitchell@fd.org

10