IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE MARIA HERNANDEZ BAUTISTA,<br><br>Defendant. | Case No. 1:26-CR-27<br><br>Hon. Rossie D. Alston, Jr.<br><br>Hearing Date: July 8, 2026 |

<u>POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING</u>

Defendant Jose Maria Hernandez Bautista (hereinafter "defendant") has no lawful status in the United States. After his third deportation, he unlawfully returned yet again, and for the past thirteen years has been impersonating a United States citizen. During this time, he fraudulently obtained driver's licenses, Social Security cards, and a United States passport in a victim's name. The defendant also fraudulently obtained at least one line of credit, and unlawfully registered to vote. The defendant even illegally voted in two Virginia federal elections. For the reasons set forth below, the United States respectfully submits that a sentence of 12 months' imprisonment on Count Two followed by the mandatory 24-month sentence for Count Four—for a total combined sentence of 36 months—is sufficient but not greater than necessary to achieve the goals of sentencing.

## I. FACTUAL BACKGROUND

The defendant is a thirty-nine-year-old native and citizen of Mexico with no lawful status in the United States. PSR at 3, 5 ¶ 16. He has been previously deported three times, in 2006, 2007, and 2011—and yet continues to unlawfully return. PSR at ¶ 17-18. At some point, he obtained the means of identification of his victim, J.D.R., a United States citizen, and for the past thirteen years has been impersonating J.D.R. PSR at ¶ 19. Using J.D.R.'s birth certificate, he fraudulently

1

obtained driver's licenses or state identification cards under J.D.R.'s name in Alabama in 2013, in North Carolina in 2015, and then in Virginia in 2016. The defendant even renewed the Virginia license in 2017, 2018, and 2024. PSR at ¶ 13, 19-24. When applying for the Virginia license, he also registered to vote, PSR ¶ 24, and then proceeded to vote in Virginia federal elections in 2016 and 2020.[1] PSR at 19. In 2016, still unlawfully using his victim's identity and United States citizenship, he applied for and received a United States passport. PSR ¶ 23. And in 2019, he purchased a vehicle, taking out a line of credit in his victim's identity. PSR ¶ 13. Between 2016 and 2021, he also received at least seven traffic tickets in Virginia and Maryland, all under the victim's name.[2]

The victim in this case is a resident of another state who discovered that his identity had been stolen when his own state notified him that it was cancelling his driver's license due to Virginia issuing a new driver's license in his identity. PSR ¶ 12. Once the victim notified his home state that he had not obtained a Virginia driver's license, law enforcement commenced an investigation into the culprit. The investigation led to the defendant and uncovered extensive identity theft that extended significantly beyond a single driver's license.

By January of 2026 Homeland Security Investigations had collected enough evidence to show probable cause that the individual who stole the victim's identity was in fact the defendant, and on January 6, 2026, United States Magistrate Judge Ivan D. Davis in the Eastern District of Virginia signed a criminal complaint, finding probable cause that the defendant had violated 8

---

[1] The statute of limitations had run on this activity prior to it being discovered. Law enforcement obtained evidence of this conduct from the Virginia Department of Elections. This information was provided to defendant in discovery at US-0000496 through -498.

[2] Produced in discovery at US-0000001 through -008.

U.S.C. § 1326(a) (Illegal Reentry After Removal) and 18 U.S.C. § 1028A (Aggravated Identity Theft). PSR ¶ 1; ECF No. 1-2.

The defendant was arrested on January 14, 2026. PSR ¶ 1; ECF No. 6. On February 10, 2026, he was indicted by a Grand Jury for violations of 8 U.S.C. § 1326(a) (Illegal Reentry After Removal), 18 U.S.C. § 1542 (False Statement in Application for Passport), 18 U.S.C. § 911 (False Claim to Citizenship), and 18 U.S.C. § 1028A (Aggravated Identity Theft). PSR ¶ 2; ECF No. 14. He pled guilty to Counts Two and Four, False Statement in Application for Passport and Aggravated Identity Theft, on March 18, 2024. PSR ¶ 3; ECF No. 23, 24.

## II. SENTENCING GUIDELINES

While the Sentencing Guidelines are not mandatory, they nevertheless play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005); *United States v. Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005). The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *Rubenstein*, 403 F.3d at 98-99.

### A. *Offense Level*

The base offense level for the defendant's conviction for Count Two, false statement in a passport application, is eight. PSR ¶ 34; U.S.S.G. § 2L2.2(a). The defendant's prior removal results in an enhancement of plus two. PSR ¶ 35; U.S.S.G. § 2L2.2(b)(1). And, because he obtained a United States passport, he receives a plus-four enhancement. PSR ¶ 36; U.S.S.G. § 2L2.2(b)(3)(A). This results in an adjusted offense level of 14. PSR ¶ 40, 48.

The defendant received a reduction for acceptance of responsibility, which results in a total

offense level of 12. PSR ¶ 52; U.S.S.G. § 3E1.1.

B. *Criminal History Category*

The PSR correctly calculates the defendant's criminal history as three points, placing him in category II, based on his 2007 conviction for possession of cocaine and his prior conviction for illegal entry in 2011. PSR ¶ 55-58.

C. *Guidelines Calculation*

Based on an offense level of 12 with a Criminal History Category of II, the Guidelines range is 12-18 months' incarceration on Count Two, followed by an additional 24 months for Count Four. PSR ¶ 95. The defendant does not object to these calculations. PSR at 19.

III.    STATUTORY ANALYSIS AND RECOMMENDATION

The Government recommends a Guideline sentence of 12 months' imprisonment on Count Two followed by the mandatory 24-month sentence for Count Four, for a combined sentence of 36 months.

A. *Section 3553(a) Factors*

Section 3553(a) directs the Court "in determining the particular sentence to impose" to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). Ultimately, the Court must impose a sentence "sufficient, but not greater than necessary" to do the following:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

*See* 18 U.S.C. § 3553(a).

**B.** *Analysis*

The defendant's actions reflect his repeated lack of respect for the laws of the United States and the people living here. Despite being deported three times, and convicted of unlawful entry into the United States, he returned and continued to violate our laws, this time with a specific victim. He illegally used various means of identification to impersonate his victim, not once, not twice, but repeatedly over a period of thirteen years to federal, state, and local governments. Specifically, during those years, he impersonated his victim to:

1. The Social Security Administration, to obtain a replacement card in March of 2013;

2. The State of Alabama, to obtain a driver's license in May of 2013;

3. The Social Security Administration, to obtain a replacement card in October 2015;

4. The State of North Carolina, to obtain a driver's license in November of 2015;

5. Fairfax County, Virginia, when ticketed for operating his vehicle with improper tinting, signs, details, or stickers in February of 2016;

6. Fairfax County, Virginia, when ticketed for following too closely while operating his vehicle in March of 2016;

7. The U.S. Department of State, to obtain a passport in April of 2016;

8. Fairfax County, Virginia, when ticketed for operating his vehicle with improper tinting, signs, details, or stickers in May of 2016;

9. The Commonwealth of Virginia, to obtain a driver's license in May of 2016;

10. Fairfax County, Virginia, when ticketed for speeding in November of 2016;

11. The Virginia Department of Elections, to vote in November of 2016;

12. The Commonwealth of Virginia, to renew a driver's license in January of 2017;

13. Fairfax County, Virginia, when ticketed for failing to pay full time and attention while operating his vehicle in February of 2017;

14. Fairfax County, Virginia, when ticketed for speeding in March of 2017;

15. The Commonwealth of Virginia, to renew a driver's license in June of 2018;

16. A car dealership and financial institution, to finance the purchase of a vehicle in August of 2019;

17. The Virginia Department of Elections, to vote in November of 2020;

18. Prince George's County, Maryland, when ticketed for following too closely while operating his vehicle in July of 2021;

19. The Commonwealth of Virginia, to renew a driver's license in March of 2024; and

20. The Social Security Administration, to obtain a replacement card in January of 2025.

This list shows not only that his impersonation was repeated, but also that it was tactical. The defendant used earlier-obtained identification documents to fraudulently acquire more documents and continue his use of the victim's identity. This practice gave the defendant an increasingly broad collection of documents and historical records to rely upon each time he applied for a new document in his victim's identity. For example, the defendant used the 2013 Alabama driver's license as proof of identity when obtaining the replacement Social Security card in 2015. He used the fraudulently obtained North Carolina driver's license as supporting evidence of his identity when he applied for the U.S. Passport in 2016. Similarly, he used that same North Carolina driver's license to illegally obtain the Virginia driver's license in 2016, during which process he also unlawfully registered to vote in Virginia. He used that unlawful voter registration to vote illegally in two elections. He also presented the fraudulently obtained driver's licenses to law

enforcement when he was ticketed for driving violations. In sum, the defendant added layers of deception between his current identification documents and his original fraudulent conduct. The defendant also used the fraudulently obtained documents to hide his illegal reentry into the United States from law enforcement. As outlined in the initial affidavit for the arrest warrant, these layers of deception required significant investigation to determine his true identity. ECF No. 2 at 6-9.

The defendant's use of the victim's means of identity when applying for and obtaining a U.S. passport—all done after the defendant had been thrice deported for unlawfully entering the United States—is not a victimless crime. The victim is a real person whose identity has been subsumed by the defendant for over a decade. As the Fourth Circuit noted fifteen years ago, "[o]n average, victims of identity theft lose about $17,000 and must spend over $1,000 and 600 hours of personal time cleaning up their credit." *Ostergren v. Cuccinelli*, 615 F.3d 263, 279 (4th Cir. 2010); *see also United States v. Smith*, 751 F.3d 107, 118 n.9 (3d Cir. 2014) (internal quotations omitted) ("a target of identity theft must often spend significant time resolving credit problems and related issues, and such lost time may not be adequately accounted for in the loss calculations under the guidelines."). Or, as the Identity Theft Resource Center found in 2018, in additional to the deep emotional, personal, and even physical effects of having one's identity stolen, "[a]n alarming percent (42.8) of respondents noted that as a result of their identity theft incident they are in debt and 40.5 percent said that they could not pay their bills."[3] That study also found that:

> The negative emotional impacts had very real physical consequences. Of the individuals that have responded, 84.1 percent reported issues with their sleep habits; 77.3 percent reported increased stress levels; 63.6 had problems with their concentration; 56.8 had persistent aches, pains, headaches and/or cramps and the same percentage experienced stomach issues; 54.5 percent had increased fatigue or decreased energy and 50 percent reported that they had lost interest in activities or

---

[3] *The Aftermath: The Non-Economic Impacts of Identity Theft*, Identity Theft Resource Center, 2018, *available at* https://www.idtheftcenter.org/wp-content/uploads/2018/09/ITRC_Aftermath-2018_Web_FINAL.pdf.

hobbies they once enjoyed.

*Id*.

This Court should impose a 12-month sentence for Count Two, for a total sentence of 36 months when combined with Count Four, for multiple reasons. Foremost, such a sentence would serve as specific deterrence for the defendant, whose ongoing criminal behavior reflects longstanding noncompliance with and disrespect for the laws of this country as well as a lack of concern about the ramifications of his actions to his victim. A substantial sentence would additionally serve as general deterrence for similarly situated individuals who seek to enter the country illegally, steal the identity of U.S. citizens to evade detection and corrupt our voter and election laws.

Such a sentence would also avoid unwanted sentencing disparities, as similarly situated defendants have been sentenced to similar terms of incarceration, including sentences longer than that which the government is seeking here. For example, in *United States v. Hilton*, the Fourth Circuit affirmed a 36-month sentence under 18 U.S.C. § 1542 for a defendant who falsely obtained a passport and then used the passport to pass bad checks. 925 F.2d 1458 (4th Cir. 1991) (unpublished). Similar sentences have also been imposed in other cases within the Fourth Circuit. *See, e.g., United States v. Rodriguez*, 523 F. App'x 962, 963 (4th Cir. 2013) (42-month sentence for false statements in passport application and aggravated identity theft); *United States v. Song*, 425 F. App'x 275 (4th Cir. 2011) (12-month sentence for violating 18 U.S.C. § 1542).

Sentences for similar activity in other circuits also correspond to, or are longer than, that which the government is recommending here. *See, e.g., United States v. Doe*, No. 8:21-CR-209-WFJ-CPT, 2025 WL 2732721, at *1 (M.D. Fla. Sept. 25, 2025) (84-month sentence); *United States v. Tyndale*, 700 F. App'x 903, 906 (11th Cir. 2017) (affirming 34-month sentence); *United States v. de Jesus-Concepcion*, 652 F. App'x 134, 137–38, 141–42 (3d Cir. 2016) (affirming 36-month

sentence); *United States v. Lumbard*, 706 F.3d 716, 720, 725-26 (6th Cir. 2013) (affirming 48-month sentence). Notably, in affirming a 120-month sentence for similar behavior, the Eleventh Circuit concluded that such a sentence was reasonable because "Doe's offense was quite serious. He used Hudson's identity for over 20 years and used it to obtain driver's licenses, passports, social security cards, and an identification card for a U.S. naval base." *United States v. Doe*, 536 F. App'x 871, 874 (11th Cir. 2013).

Like the defendants identified above, the history and characteristics of this defendant demonstrate a strong need to protect the public from his actions and promote respect for the laws of this country. The United States submits that a Guidelines sentence of 12 months' incarceration on Count Two, which combined with the 24 month mandatory sentence for Count Four results in a total sentence of 36 months, with credit for time served, followed by a year of supervised release with the special conditions outlined in the Presentence Report, PSR at 17-18, is a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

//
//
//
//
//
//
//
//
//
//
//

**CONCLUSION**

For the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of 12 months' incarceration on Count Two, which combined with the 24 mandatory sentence for Count Four results in a total sentence of 36 months followed by a year of supervised release, with credit for time served.

Respectfully submitted,

Todd. W. Blanche
Acting Attorney General

Date:  July 1, 2026          By:  *Nicholas J. Bolzman*
                                  Nicholas J. Bolzman
                                  Special Assistant United States Attorney (LT)

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2026, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

*Nicholas J. Bolzman*
Nicholas J. Bolzman
Special Assistant United States Attorney (LT)
United States Attorney's Office
2700 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3924
Facsimile: (703) 299-3980
Email: Nicholas.Bolzman@usdoj.gov